UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JEANNE SOARES,                           :
       Plaintiff,                  :
                                   :
v.                                       :     No. 3:14CV968 (DJS)
                                   :
UNITED OF OMAHA LIFE INSURANCE :
COMPANY, MUTUAL OF OMAHA,          :
QUALIDIGM GROUP POLICY            :
#GLUG-371J, QUALIDIGM PLAN        :
ADMINISTRATOR,                     :
       Defendants.                 :


MEMORANDUM OF DECISION

The plaintiff, Jeanne Soares ("Soares"), brings this action against the defendants, United

of Omaha Life Insurance Company, Mutual of Omaha (the "United of Omaha defendants"),

Qualidigm Group Policy #GLUG-371J, and Qualidigm Plan Administrator (the "Qualidigm

defendants"), alleging violations of the Employee Retirement Income Security Act of 1974, as

amended, 29 U.S.C. §§ 1101 et seq. ("ERISA"). Now pending before the Court are motions for

summary judgment filed by the Qualidigm defendants (doc. # 36) and the United of Omaha

defendants (doc. # 38). For the following reasons, both of the motions for summary judgment are

granted.

I. FACTS

Connecticut Peer Review Organization, Inc., d/b/a Qualidigm, provides healthcare

consulting and research services to clients in the public and private sectors. From May 2000 until

April 8, 2011, Soares was employed by Qualidigm as a Nurse Reviewer. As a Qualidigm

employee who worked more than twenty hours per week, Soares was entitled to group term life

and accidental death and dismemberment insurance benefits that were paid for by Qualidigm. In

September 2007, Qualidigm moved its employees' group term life and accidental death and dismemberment insurance to a new carrier, United of Omaha Life Insurance Company ("United of Omaha").  As of September 1, 2007, eligible Qualidigm employees became participants in United of Omaha Life Insurance Company Group Policy No. GLUG-371J (the "Plan"). Qualidigm delegated to United of Omaha the discretion to determine eligibility for benefits under the Plan.

The Plan provided in part that, "You may be able to continue Life insurance under this provision without payment of premium if You become Totally Disabled while insured under the Policy prior to age 60." (Doc. # 37-4, at 17). For purposes of the Plan, "Total Disability, Totally Disabled or Disabled means that because of an Injury or Sickness You are completely and continuously unable to perform any work or engage in any occupation." (*Id.* at 37). The Plan also provided that, "You must notify Us in writing of Total Disability within three months from the date You became Totally Disabled. Satisfactory proof of Total Disability must be submitted to Us before the end of the Waiver of Premium Benefit Elimination Period." (*Id.* at 18). "The Waiver of Premium Benefit Elimination Period is a period of 9 consecutive months of Total Disability beginning on the date You became Totally Disabled while insured under the Policy." (*Id.*).  The Plan also specified that, "No legal action can be brought more than three years after the date written proof of loss is required." (*Id.* at 33).

Soares was out of work on a medical leave of absence beginning on March 22, 2010. She applied for short-term disability benefits under a disability policy issued by United of Omaha. Soares' application was initially denied. In response to her appeal of that denial, however, her application was later approved. In a letter dated February 7, 2011, United of Omaha notified

Soares that she had been approved for long-term disability benefits, effective September 28, 2010, because she was "prevented from performing at least one of the Material Duties of [her] Regular Occupation on a part-time or full-time basis," was "unable to generate Current Earnings which exceed 80% of [her] Basic Monthly Earnings," and was beyond the "Elimination Period" of 180 calendar days. (Doc. # 37-7, at 1, 2).

In a letter dated April 8, 2011, the Qualidigm Human Resources Director notified Soares that "in light of your medical leave of absence exceeding the one-year mark (since March 22, 2010), and your continued inability to return within one year of your initial absence, in accordance with our existing policies, we will terminate your employment effective today, April 8, 2011." (Doc. # 37-3, at 1). That letter also advised Soares that Qualidigm was cancelling her group life, accidental death and dismemberment insurance, i.e., the Plan, "on 4/5/11," but that she had "the option of continuing this coverage on your own, at your expense." (*Id.*). Soares thereafter converted her coverage into an individual life insurance policy that was issued to her by United of Omaha on May 8, 2011. That policy has a face value in the amount of $144,000.00 and requires payment of an annual premium in the amount of $4,788.00 for a period of forty-seven years. Soares was 53 years old at the time her individual life insurance policy was issued.

At the time Soares was approved for long-term disability benefits, United of Omaha's Long Term Disability Department notified its Group Life Claims Department ("Life Claims Department") that she had been disabled and unable to work since March 2010. The Life Claims Department subsequently obtained copies of the medical records in Soares' long-term disability file and referred the matter to Dr. Stuart Schlanger for an assessment of her eligibility for waiver-of-premium benefits under the Plan. Dr. Schlanger's report indicates that he reviewed records of

-3-

Dr. Karnasiewitz concerning Soares that covered the period between February 22, 2010, and

December 14, 2010. Dr. Schlanger's report reached the following conclusion: "Recommendation:

enclosed records do not support Restrictions and Limitations from sedentary level work or

activities. Note: policy definition is 'any work.'" (Doc. # 37-11, at 2).

By way of a letter dated March 16, 2011, the Life Claims Department notified Soares

that, based on a review of her medical records, United of Omaha concluded that she did not meet

the definition of Total Disability in accordance with the provisions of the Plan, and,

consequently, United of Omaha was "unable to approve the Continuation of your Group Life

Insurance [without payment of premium] during Total Disability." (Doc. # 37-10, at 1). The letter

stated that the Plan "defines totally disabled as completely and continuously unable to perform

any work or engage in any occupation." (Id.). The letter informed Soares that she had "the right to

convert $144,000.00 of this terminating insurance by completing the application in the attached

conversion brochure . . . ." (*Id.*).

The March 16, 2011, letter further advised Soares that "[i]n the event you wish to appeal

this denial, you have the right to request a review by the Life Claims Department. This request

for an appeal must be submitted within 60 days from receipt of this notice." (*Id.*). The letter

specified certain information required to be submitted with a request for an appeal, and then

stated, "In addition to the above information, please submit any written comments, documents,

records, and other information you may have related to the claim. Upon receipt, we will review

and take into account all information submitted related to the claim without regard to whether

such information was submitted or considered in the initial claim decision." (*Id.* at 1-2). Soares

-4-

was advised that, "You have the right to bring a civil action under ERISA section 502(a) following the appeal process." (*Id*. at 2).

Soares appealed the denial of the continuation of her group life insurance coverage without payment of premium in a letter dated April 15, 2011. Her appeal letter discussed at length her medical history and physical limitations. She also included with her letter additional medical records that had not been considered in connection with the initial decision.

United of Omaha referred Soares' appeal to Dr. Thomas Reeder, Senior Vice President and Medical Director with United of Omaha. In his report, which was completed on May 17, 2011, Dr. Reeder states that, in addition to the records that had been reviewed by Dr. Schlanger, he also reviewed records from five additional doctors, as well as physical therapy records, MRI results, and the detailed appeal letter from Soares. Dr. Reeder's report includes an extensive discussion of the medical evidence (approximately 3 1/2 single-space pages in length).     Dr. Reeder concluded that, "Total disability as defined per Waiver of Premium as [sic] not supported. The activities described by the Insured are consistent with part-time sedentary to light work." (Doc. # 37-13, at 6).

United of Omaha adopted Dr. Reeder's recommendation and denied Soares' appeal. In a letter dated June 2, 2011, United of Omaha notified Soares that her appeal had been denied. The June 2, 2011, letter identified and reviewed the medical evidence that was considered during the appeal process and concluded that "the medical documentation in your file does not support that you are totally disabled as required by the policy. As a result, we are unable to overturn our previous decision, and your appeal for continuance of group life insurance has been denied." (Doc. # 37-14, at 4). That letter advised Soares that she had "exhausted all administrative rights

to appeal," and that "[i]f your plan is governed by the Employee Retirement Income Security Act (ERISA), you have the right to bring a civil action suit once all administrative rights to review have been exhausted." (*Id.*). All parties agree that the Plan is governed by ERISA.

The Complaint in the instant action was filed in the Connecticut Superior Court. The United of Omaha defendants removed the matter to the United States District Court for the District of Connecticut on July 2, 2014.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited to do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56 (c)(1). In considering a motion for summary judgment, the Court must "construe the evidence in the light most favorable to the non-moving party  and . . . draw all reasonable inferences in its favor." *Huminski v. Corsones*, 396 F.3d 53, 69-70 (2d Cir. 2004) (internal quotation marks omitted). At the same time, however, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could

-6-

reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.  Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party . . . ." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

DISCUSSION

Soares alleges that the denial of her application for waiver of premium benefits under the Plan violated ERISA because the decision by United of Omaha to deny that application was arbitrary and capricious.[1]  Her suit has been brought pursuant to 29 U.S.C. § 1132(a)(1)(B) (ERISA § 502 (a)(1)(B)). Both the Qualidigm and the United of Omaha defendants contend that they are entitled to summary judgment because Soares' civil action is untimely and because the decision to deny her application was not arbitrary and capricious.

A.  Statute of Limitations

ERISA does not specify a statute of limitations for actions brought pursuant to 29 U.S.C. § 1132. *See Carpenter v. Aetna Life Insurance Co.*, 638 F. Supp. 2d 325, 328 (N.D.N.Y. 2009). "Absent a controlling statute to the contrary, a participant and a plan may agree by contract to a particular limitations period . . . as long as the period is reasonable." *Heimeshoff v. Hartford Life & Accident Insurance Co.*, 134 S. Ct. 604, 610 (2013). The Plan in which Soares participated provided that, "No legal action can be brought more than three years after the date written proof

---

[1]Soares' complaint also included a count (Count Two) brought pursuant to 29 U.S.C. § 1132 (c) that claimed ERISA violations based on alleged breaches of fiduciary duties. In responding to the two motions for summary judgment, Soares stated that her objection did not extend to those portions of the motions directed to Count Two. Consequently, the Court concludes that the claims raised in Count Two have been abandoned. *See Jackson v. Federal Express*, 766 F.3d 189, 198 (2d Cir. 2014) (a court may "infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned").

of loss is required." (Doc. # 37-4, at 33). The Supreme Court considered virtually the same limitations provision in *Heimeshoff* and held that it was enforceable. *Heimeshoff*, 134 S. Ct. at 616.

As previously noted, the Plan specified that "[s]atisfactory proof of Total Disability must be submitted to Us before the end of the Waiver of Premium Benefit Elimination Period," and that the Waiver of Premium Benefit Elimination Period "is a period of 9 consecutive months of Total Disability beginning on the date You became Totally Disabled while insured under the Policy." (Doc. # 37-4, at 18). According to Soares, she has been totally disabled "since March 22, 2010." (Doc. # 37-12, at 1). Under the express terms of the Plan, Soares was required to submit satisfactory proof of her total disability to United of Omaha before the end of the nine month period beginning on March 22, 2010, i.e., by December 22, 2010. The Plan specified a limitations period of "three years after the date written proof of loss is required." (Doc. # 37-4, at 33). Three years from December 22, 2010 was December 22, 2013. The instant action, which was initially filed in the Connecticut Superior Court, was not commenced under Connecticut law until process was served upon the defendants on June 2, 2014.[2] *See Rocco v. Garrison*, 268 Conn. 541, 553 ("In Connecticut, an action is commenced when the writ, summons and complaint have been served upon the defendant.").

---

[2]Soares contends that her suit commenced on May 30, 2014, when process was delivered to a state marshal. Conn. Gen. Stat. § 52-593a provides that "a cause or right of action shall not be lost because of the passage of time *limited by law* within which the action may be brought, if the process to be served is personally delivered to a state marshal . . . within such time . . . ." (emphasis added). Connecticut courts have concluded, however, that Conn. Gen. Stat. § 52-593a "applies only to limitations provided by law [and] does not purport to apply to limitations provided by contract." *Sacks Realty Co. v. Newark Insurance Co.*, 34 Conn. Supp. 564, 566 (Conn. Super. Ct. 1976). Even if Soares had initiated her action on May 30, 2014, that date was not within three years of December 22, 2010.

Acknowledging that the limitations period specified in the Plan is similar to that considered by the Supreme Court in *Heimeshoff*,  Soares does not contend that the three year limitations period is unreasonable. Rather, she argues that the language in the Policy regarding the start date of the limitations period should not be enforced as it is literally written. She maintains that the limitations period was extended by virtue of an invitation to submit additional information offered to her by United of Omaha in its initial denial of her claim for waiver of premium benefits.  Her argument relies upon the decision of the Second Circuit in *Epstein v. Hartford Life and Accident Insurance Co.*, 449 F. App'x 46 (2d Cir. 2011). The ERISA plan at issue in *Epstein* provided that legal action against the defendant insurance company had to be initiated within three years after written proof of loss was required to be furnished to the company. After initially denying the plaintiff's application for long-term physical disability benefits, but granting a claim for two years of mental-health benefits, the company subsequently requested additional information to determine whether to approve long-term physical disability benefits beginning after the two years of mental-health benefits ended. The Second Circuit concluded that the company's request for additional information in order to make an initial determination about this different time period "extended the limitations period to run from [the date] when such proof of loss was due" in response to the company's request. *Id.* at 49.

As noted by another District Court within this Circuit, the insurance company in *Epstein* had "requested additional information to determine whether to approve physical disability coverage for the years following [the end of the mental-health benefits period], a new period in time altogether. Thus . . . the request for information was an initial consideration, rather than a reconsideration, of plaintiff's eligibility." *Viti v. Guardian Life Insurance Co. of America*, 10 Civ.

2908 (ALC) (MHD), 2013 U.S. Dist. LEXIS 174145, at *8-9 (S.D.N.Y. Dec. 11, 2013). Here, as

in *Viti*, the letter denying the plaintiff's claim "does not request more information for the

consideration of [the plaintiff's] application," but relates instead to "an appeal of the denial" of

that application. *Id.* at *9. This significant factual difference distinguishes Soares' situation from

that of the plaintiff in *Epstein*.

      Even if it were assumed for the sake of argument that the limitations period was extended

by virtue of the opportunity to submit additional information provided by United of Omaha in its

initial denial of Soares' claim for waiver of premium benefits, this action would still be untimely.

As described by Soares, the denial letter sent to her by United of Omaha provided her with "the

right to request a review" and "submit any . . . other information related to the claim" "within

sixty (60) days from March 16, 2011 (i.e. May 15, 2011)." (Doc. # 47, at 16-17). Viewed in the

light most favorable to Soares, this opportunity to submit additional information would have

extended the limitations period to three years after May 15, 2011. This action was not filed on or

before May 15, 2014. The plaintiff's contention that the limitations period should not have begun

until United of Omaha denied her appeal on June 2, 2011, is contrary to the express language of

the Plan. In this regard, the Supreme Court has "recognized the particular importance of

enforcing plan terms as written in § 502 (a)(1)(B) claims." *Heimeshoff*, 134 S. Ct. at 612.

Additionally, a limitations provision such as the one in the Plan in which Soares participated may

be enforceable even though "proof of loss is due before a plan's administrative  process can be

completed," with the result being that "the administrative exhaustion requirement will, in

practice, shorten the contractual limitations period." *Id.* at 608.

Soares also contends that the limitations period specified in the Plan should not be enforced because the notice she received of her rights with respect to an appeal of the denial of her claim failed to notify her of the time by which she needed to file a civil action. Her argument in that regard is based on a Department of Labor ERISA regulation which states that notification of an adverse benefit determination must include "[a] description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act . . . ." 29 C.F.R. § 2560.503-1(g)(1)(iv).  This same argument was considered and rejected by Judge Arterton in the District Court decision in *Heimeshoff*:

> 29 C.F.R. § 2560.503-1(g)(1)(iv) unambiguously requires that the notification of benefit determination include "a statement of the claimant's right to bring a civil action," whereas its description of the necessary notification for claim review procedures requires "[a] description of the plan's review procedures and the time limits applicable to such procedures." That the regulation requires notification of time limits for plan review procedures but says nothing about time limits with respect to civil actions suggests that the [Department of Labor] did not intend to require such a time limit notification in the benefit determination. . . . A civil action seeking remedies under the plan is a separate and distinct review process from those contemplated in the claim proceedings under a benefits plan.

*Heimeshoff v. Hartford Life & Accident Insurance Co.*, Civil No. 3:10cv1813 (JBA), 2012 U.S. Dist. LEXIS 6882, at *16-17 (D. Conn. Jan. 20, 2012). *But see Novick v. Metropolitan Life Insurance Co.*, 764 F. Supp. 2d 653, 661 (S.D.N.Y. 2011) ("the applicable regulations and the Plan itself [require] . . . disclosure of the applicable [civil action] time limit").

Even if the Court were to conclude that the ERISA regulations did require United of Omaha to include the time limit for bringing a civil action in its notice to Soares, the failure to do

so in this instance would not entitle Soares to a tolling of the three-year limitations period specified in the Plan. "Statutes of limitations are generally subject to equitable tolling where necessary to prevent unfairness to a plaintiff who is not at fault for her lateness in filing." *Veltri v. Building Service 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004). At the same time, however, "a plaintiff who has actual knowledge of the right to bring a judicial action challenging the denial of her benefits may not rely on equitable tolling notwithstanding inadequate notice from her pension plan." *Id.* at 326.

Soares has acknowledged that a complete copy of the Plan was sent to her counsel by way of a cover letter dated January 23, 2013. At that time she had, at a minimum[3], nearly a year left before the expiration of the three-year limitations period.  Since Soares' counsel "had received a copy of the plan containing the unambiguous limitations provision long before the three-year period for [Soares] to bring the claim had expired . . . [she] is not entitled to equitable tolling" of the limitations period specified in the Plan. *Heimeshoff v. Hartford Life & Accident Insurance Co.*, 496 F. App'x 129, 130-31 (2d Cir. 2012). In *Prabhakar v. Life Insurance Co. of North America*, 996 F Supp. 2d 124 (E.D.N.Y. 2013), the plaintiff, who had been denied long-term disability benefits under an ERISA plan, argued that she should not be subject to the three-year limitations period specified in the plan because the copy of the plan she had received from her employer did not include the provision specifying a three-year limitations period. Although the court found that the copy of the plan the plaintiff received from her employer did not contain the provision for the three-year limitations period, the court concluded that "Plaintiff is not

---

[3]If the initial denial letter issued by United of Omaha extended the limitations period, as has been argued by the plaintiff, well over a year would have been left before the expiration of the three-year limitations period.

-12-

entitled to equitable tolling, and this action remains time-barred [under the three-year limitations period]," because the plaintiff had subsequently received from the plan administrator a copy of the plan that included the limitations period language. *Id.* at 140. This Court likewise concludes that Soares' action is time-barred by the three-year limitations period specified in the Plan.

## B. United of Omaha's Decision

All parties have addressed the issue of whether United of Omaha's decision denying Soares' application for benefits was arbitrary and capricious.[4] In doing so, the parties have presented the Court with conflicting evidence as to whether or not Soares was totally disabled within the meaning of the Plan. The motions that are pending before the Court are motions for summary judgment, and "a district court may not grant a motion for summary judgment if the record reveals a dispute over an issue of material fact." *O'Hara v. National Union Fire Insurance Co.*, 642 F3d 110, 117 (2d Cir. 2011). As to the issue of whether United of Omaha's decision was arbitrary and capricious, there clearly are material facts that are genuinely in dispute. Because the Court has determined that this action is time-barred, it is not necessary, nor would it be appropriate in the context of motions for summary judgment, to rule on this issue.

## CONCLUSION

Because the Court has determined that the instant action is time-barred by the three-year limitations period specified in the Plan, the Qualidigm defendants' motion for summary

---

[4]Qualidigm had delegated to United of Omaha "the discretion to determine eligibility for benefits and to construe and interpret all terms and provisions of the [Plan]." (Doc. # 37-4, at 36). Because the decision at issue in this case was discretionary, "arbitrary- and- capricious review [is] therefore proper." *Durakovic v. Building Service 32 BJ Pension Fund*, 609 F.3d 133, 137 n.2 (2d Cir. 2010).

judgment (**doc. # 36**) is **GRANTED** and the United of Omaha defendants' motion for summary

judgment (**doc. # 38**) is **GRANTED**.

Judgment shall enter in favor of the defendants and the Clerk shall close this case.

SO ORDERED this    13th  day of January,  2016.

_____/s/ DJS_____
Dominic J. Squatrito
United States District Judge